IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


RYAN JAMES GRIFFIN,

        Plaintiff,

v.                                                  CIV 09-00312 BB/KBM

WARDEN P. SNEDEKER,

        Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Defendant Patrick Snedeker's Motion for Summary Judgment *(Doc. 29)*. By memorandum opinion and order entered July 9, 2009, all claims against Defendant San Miguel County Detention Center ("SMCDC") were construed as claims against the County, which was then dismissed as a party. *Doc. 11*. Having considered the arguments, pleadings and relevant law, I find Defendant Snedeker's motion to be well taken. I therefore recommend that summary judgment be granted in favor of Defendant Snedeker and that this action dismissed with prejudice.

### SUMMARY JUDGMENT STANDARD WHEN
### THE QUALIFIED IMMUNITY DEFENSE HAS BEEN RAISED

The Federal Rules of Civil Procedure provide that summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The affirmative defense of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages

insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, when qualified immunity is raised, motions for summary judgment are reviewed differently than other summary judgment motions because of the underlying purposes of qualified immunity. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Nelson v. McMullen*, 207 F.3d 1202, 1205-06 (10th Cir. 2000)).

> When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion. The plaintiff must demonstrate that on the facts alleged the defendant violated his or her constitutional or statutory rights. In addition, the plaintiff must show that the right was clearly established at the time of the alleged unlawful activity.

*Fisher v. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009) (quoting *Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808, 815-16, 818 (2009)). If the plaintiff does not satisfy this heavy two-part burden, the defendant is entitled to qualified immunity.

> In determining whether the plaintiff has met its burden of establishing a constitutional violation that was clearly established, we will construe the facts in the light most favorable to the plaintiff as the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007). . . . However, because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'"

*Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008)).

Furthermore, pursuant to Fed. R. Civ. P. 56(e)(2), the party opposing a motion for

summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."  "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'"  *Medina*, 252 F.3d at 1128 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

### UNDISPUTED FACTS

Griffin was arrested on April 2, 2008 in Taos County, New Mexico, on charges of burglary, fraudulent signing of a credit card, theft of a credit card, and fraudulent use of a credit card.  Accordingly, Griffin was considered a Taos County pre-trial detainee.  SMCDC had entered into an agreement with Taos County to house Taos County adult inmates or detainees in exchange for monetary consideration.  Consequently, Plaintiff was transported and booked into SMCDC on April 4, 2008.  The initial charges filed against him were dropped, and custody of Plaintiff was transferred to Bernalillo County on April 10, 2008.  When the Taos charges were refiled, Griffin was transferred back to SMCDC on April 22, 2008.  On June 23, 2008, Griffin was transported again, this time to Taos County for court related matters.  He was transported back to SMCDC on June 26, 2008.  He remained at SMCDC until August 14, 2008, when he was transported back to Taos County at Taos County's request.  On January 9, 2009, Plaintiff was sentenced to serve a prison term and is currently incarcerated at the Lea County Correctional Center (LCCC) in Hobbs, New Mexico.

### THE CLAIMS

Griffin, proceeding pro se, filed this action against SMCDC and Warden Snedeker pursuant to 42 U.S.C. § 1983 on March 30, 2009.  In his Complaint, Griffin sets forth numerous

claims alleging that (1) his personal and legal mail was opened by SMCDC employees outside his presence, (2) he was retaliated against for filing a grievance regarding his mail allegations, (3) his due process and constitutional rights were violated, (4) SMCDC and Warden Snedeker engaged in price gouging with regards to goods sold in the commissary, (5) he was denied access to legal materials, (6) SMCDC misclassifies its inmates, (7) he received improper medical care including substitution of brand name medications for generic medications, (8) unnecessary strip searches are conducted on inmates, and (9) SMCDC and Warden Snedeker do not provide indigent or disability care.

Although Defendant Snedeker's motion for summary judgment on all claims was filed in November 2009, no timely response was received so I entered an order to show cause why the action should not be dismissed for lack of prosecution. *Doc. 30*. Griffin then requested and was granted a lengthy extension of time to respond to the summary judgment based in part that he was to be placed at Los Lunas for a minimum of sixty days for a psychiatric evaluation. *Doc. 31*. Finally, with the briefing complete, I can now address the issues.

### THE SUBMITTED EVIDENCE ON THE VARIOUS CLAIMS

During Griffin's incarceration at SMCDC several policies were in place regarding inmate correspondence, inmate rights, and grievance procedures. Policy No. 030400(VI)(E) provides that ingoing and outgoing inmate mail may be opened and inspected for contraband. Mail may be read, censored, or rejected when based on legitimate institutional interests of order and security. *Doc. 29-1, Ex. A*. Policy No. 030401(II)(D)(1), however, provides an exception that outgoing letters to attorneys, entities providing legal assistance, the courts, government officials, news media, grand juries, and law enforcement agents or agencies are deemed "privileged correspondence" and shall not be opened for inspection. *Id.* Policy No. 030401(II)(D)(2)

provides that incoming letters deemed "privileged correspondence" may be opened but not read, in the presence of the inmate. If such mail is opened, written notice must be provided to the inmate. *Id.* Furthermore, Policy No. 030401(II)(D)(2)(b) provides that SMCDC staff will maintain a log of all incoming, privileged correspondence. *Id.*

SMCDC's established policies in place recognized an inmate's constitutional right to have access to and present grievances to the court and an inmate's right to consult with an attorney under reasonable regulations. *Doc. 29-1, Ex. A & Doc. 29-4, Ex. B.* SMCDC has an institutional library onsite, however, it is not a law library. *Doc. 29-4, Ex. B.*

During Griffin's detention, SMCDC contracted with Swanson to provide supplies and products in the commissary. *Id.* The prices of items sold in the commissary reflected the prices of similar items sold in the community of San Miguel. *Id.* In 2008, the price of a stamp alone was $0.42. *Id.* The commissary charged $0.65 for a stamped envelope. *Id.* Indigent inmates unable to pay for postage were provided with two first-class stamped envelopes per week by SMCDC. *Id.*

SMCDC's established polices in place provided for a classification process which assesses the risk of violence, escape, and disruption each inmate poses in order for the facility to provide adequate security and supervision. *Doc. 29-7, Ex. C.* A risk assessment was conducted on Plaintiff each time he was booked into SMCDC. *Id.* Griffin was classified according to SMCDC's classification plan and placed in general population. *Id.* SMCDC records indicate that Griffin was not strip searched during the booking process any of the three times he was placed into SMCDC. *Id.* Defendant, however, admits that Griffin was subjected to random strip searches during his detention in general population. *Doc. 29* at 9.

Griffin was seen by the medical staff and provided medical treatment on several

occasions while at SMCDC.  *Doc. 29-10, Ex. D.*  After finding him to be lactose intolerant, Griffin was placed on a restricted appropriate diet.  Griffin was also administered medications as needed during his stay including Prozac, Paroxetine, Tylenol, Benadryl, CTM and Robitussin.  *Id.*  SMCDC provides medical attention to all inmates regardless of their ability to pay.  *Doc. 29-4, Ex. B.*

SMCDC had a grievance policy, at the time in question, which provided Griffin a means of addressing and potentially resolving his concerns.  During his stay at SMCDC, Griffin filed just one grievance, dated August 5, 2008, alleging that his legal mail was provided to him unsealed, some of his mail was returned to sender, and a vague belief that he was the subject of discrimination.  Although SMCDC has no record of its response to Griffin's grievance, Chief of Security and Assistant Facilities Director, Johnny Lujan recalls responding to the grievance.  *Doc. 29-1, Ex. A.*  No other grievances were ever filed by Griffin.

## ANALYSIS

Defendant first asserts that all of Griffin's claims, with the exception of those which are related to mail or retaliatory transfer, are barred because he failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997 *et seq*.  Griffin in turn argues that when he attempted to use the grievance process, Warden Snedeker transferred him from SMCDC and thus, he was precluded from exhausting his administrative remedies.  Alternatively, Defendant contends that regardless of any exhaustion requirement, all of Griffin's claims fail on their merits on the evidence now before the Court.

### *Exhaustion of Administrative Remedies*

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The requirement to exhaust all administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Under the PLRA, exhaustion is mandatory. *Jones v. Bock*, 549 U.S. 199, 211 (2007). Moreover, failure to exhaust is an affirmative defense and thus, the burden of proof lies with the defendant. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

Defendant has set forth evidence in the form of copies of policies and procedures, as well as affidavits from prison officials, showing that SMCDC had a grievance procedure in place and available to Griffin during the time in which he was a detainee. *See Doc. 29-1*, Ex. A at ¶7. Griffin does not dispute this fact, or provide any evidence to the contrary. Clearly, these administrative remedies were available to Griffin in the form of policies and procedures adopted by SMCDC. *See Williams v. Sirmon*, 350 F. App'x 294, 297 (10th Cir. 2009).

Moreover, the undisputed evidence shows that Griffin was aware of the procedures and, in fact, availed himself of the procedure just one time. *Doc. 1* at 12 (Griffin's August 5, 2008 grievance). Griffin noted that the mail-related incidents for which he was seeking relief occurred over a four-month period from "4/2/08 - present." *Doc. 1* at 12. As to the remaining claims presented here, Griffin admits that he did not file grievances even though the administrative remedies were available to him while at the facility.[1] Therefore, the PLRA's exhaustion requirement would bar all claims except those related to his mail and transfer.

Griffin asserts that his failure to file grievances is justified, however. In support of his

---

[1] Defendant concedes that Griffin's August 14, 2008 transfer from SMCDC effectively eliminated access to the procedure for his retaliatory transfer claim.

assertion, Griffin cites to several cases from the Second and Fifth Circuits. Not only are these cases not binding law on this Court, they do not support Griffin's position. The Second Circuit has held that "'special circumstances' may excuse a prisoner's failure to exhaust, but dismissal with prejudice, when remedies are no longer available, is required 'in the absence of any justification for not pursuing [such] remedies.'" *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citation omitted). Any special circumstances referred to by the Second Circuit in *Giano* are not present in this case. In short, Griffin has not provided the Court with any legitimate justification as to why he failed to file grievances regarding the majority of his claims. Nor has Griffin shown that Warden Snedeker's conduct, or the conduct of anyone at SMCDC, prevented him from filing grievances between April 4 to April 10, 2008, April 22 to June 23, 2008, or June 26 to August 14, 2008.

As to his unexhausted claims, Griffin acknowledges that he no longer has the ability to take advantage of the grievance procedure at SMCDC since he is no longer confined at the institution. Nevertheless, he had plenty of time in which he could have availed himself of the grievance procedures. Accordingly, with the exception of his mail related and retaliatory transfer claims, the exhaustion requirement justifies dismissal of Griffin's claims.

### *Alternatively, The Claims Fail On The Merits*

Even if Griffin's failure to exhaust administrative remedies could somehow be found justifiable, his claims still fail.[2] As to his due process claim, a person accused of a crime may legitimately be detained by the Government, prior to a determination of their guilt or innocence, in order to ensure their presence at trial. *Bell v. Wolfish*, 441 U.S. 520, 523 (1979) (citing 18

---

[2] Griffin voluntarily dropped his claims regarding allegations of medical care and the misclassification of inmates. *See Doc. 36* at 8.

U.S.C. §§ 3146, 3148). Griffin's broad assertion that "any condition of confinement, especially pre-trial confinement, is considered a violation of due process" is clearly unsupportable. *Doc. 36* at 6.

Turning to Griffin's price gouging claim, "there is simply no legal basis for a demand that inmates be offered items for purchase at or near cost." *McCall v. Keefe Supply Co.*, 71 F. App'x 779, 780 (10th Cir. 2003) (citation omitted). Moreover, Defendant correctly points out that in 2008 the price of a stamp was $0.42. Charging 23 cents for a single envelope certainly does not rise to the level of unreasonable or excessive.

As to Griffin's claim that he was denied access to legal materials, "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). "[W]hile adequate libraries are one constitutionally acceptable method to assure meaningful access to the courts, . . . there are alternative means to achieve that goal." *Id.* at 830. Furthermore, an inmate claiming that his right of access to the courts was interfered with must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Griffin merely alleges that a "lack of access to legal materials" resulted in a violation of his constitutional rights. Nowhere does Griffin provide any evidence or even allege that his efforts to pursue a legal claim were hindered. Thus, this claim fails as well.

As for Griffin's claim regarding strip searches, prisoners do have a constitutional right to privacy. However, an "inmate['s] right to privacy must yield to the penal institution's need to maintain security." *Jackson v. Central New Mexico Correctional Facility*, 976 F.2d 740, 1992

WL 236921, *2 (10th Cir. 1992) (citing *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982)). "Prison regulations requiring strip searches could be valid if 'reasonably related to legitimate penological interests.'" *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 79 (1987)).

Neither in his Complaint or his Response to Defendant's motion does Griffin even allege a single instance in which he actually was subjected to a strip search. He merely states that strip searches are "against the law." Griffin "believes" there is Tenth Circuit case law to support his allegation that the strip searches are a violation of law, but concedes that he was unable to find any. *See Doc. 36* at 8. That is not surprising given the Tenth Circuit's observation that

> the Courts have upheld the right of prison officials to conduct random strip searches in consideration of the limited expectation of privacy that an inmate has which might entitle him to protection of the Fourth Amendment against unreasonable searches and seizures, including searches of his person. *Hudson v. Palmer*, 468 U.S. 517 (1984); *Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Dunn v. White*, 880 F.2d 1188, 1191 (10th Cir.1989).

*Tiger v. Cowley*, 986 F.2d 1429 (10th Cir. 1993); *see also Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Thus, even if random strip searches for detainees in general population violated constitutional protections, such law was not clearly established.

Finally, as for his general claim that SMCDC does not provide indigent care, Griffin does not allege that he was deprived of medical care because of indigency or that he could not afford postage. The undisputed evidence reveals that SMCDC provides medical attention to all inmates regardless of their ability to pay. *Doc. 29-4* at 3. Inmates who cannot afford postage will be provided two first-class stamped envelopes per week. *Id.* Inmates who need additional postage for legal mail will be provided with such by SMCDC upon a showing of need. *Id.* As to Griffin's assertion that he was not provided with hygiene items, he failed to assert this claim in his Complaint, did not exhaust his administrative remedies, and has failed to show actual injury.

10

*Mail Related Claims*

The Supreme Court has recognized the security concerns regarding incoming mail in prisons. *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989)). And, "[t]he Court acknowledged that prison officials are better equipped than the judiciary to deal with the security implications of interactions between prisoners and the outside world, and emphasized that broad deference should be accorded their efforts." *Id.* The Tenth Circuit has recognized that isolated incidents of opening legal mail without any evidence of improper motive or interference with access to the courts, does not give rise to a constitutional violation. *Smith*, 899F.2d at 944; *see also Martinez v. Johnson*, 33 F. App'x 395, 2002 WL 188971, *2 (10th Cir. 2002).

Griffin asserts that prison officials interfered with both his personal and legal mail. Specifically, he contends that his legal mail was opened outside of his presence. Griffin merely alleges that his legal mail was given to him already opened. He does not assert that the opening of his legal mail hindered his communications with the court or deprived him of access to the courts in any way. As Griffin has come forward with no evidence of an improper motive on the part of SMCDC and its staff or an interference with Griffin's access to the courts, Defendant is entitled to judgment as a matter of law.

As to Griffin's contention that he did not receive some of his incoming personal mail, Griffin does not provide any specifics. Defendant, however, details an instance in which a package was delivered that was addressed to "James Santistevan" rather than Griffin. The package was sent from a Bernalillo County Detention Center inmate and contained a letter requesting black tar heroin. After receiving proof that Griffin had legally changed his name from James Santistevan to Ryan Griffin, at Griffin's request SMCDC forwarded the package,

minus the letter regarding black tar heroin, to his mother.  There is no evidence of any intentional misconduct on the part of SMCDC or any of its staff.  Griffin has failed to show a constitutional violation.

### *Transfer Retaliation Claims*

Griffin asserts that he was transferred from SMCDC in retaliation for filing the August 5, 2008 grievance.  The law was clearly established that

> "prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his" constitutional rights.  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir.1990).  "This principle applies even where the action taken in retaliation would be otherwise permissible."  *Id.* at 948.  As the Supreme Court made clear in *Turner*, however, it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role. . . .  Accordingly, *a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place."*  *Id.* at 949-50.  An inmate claiming retaliation must "allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights."  *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir.1990) (emphasis added).

*Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (emphasis added).

Griffin has not come forward with sufficient evidence that, when viewed in the light most favorable to him, raises a material issue of fact on this "but for" prong.  It is undisputed that Griffin was a Taos County detainee while being housed at SMCDC waiting for his trial date in Taos County.  Because Griffin was a Taos County detainee, SMCDC was *required* to transport him to Taos County upon the County's request.  The *only* evidence on this issue is that the *all* of Griffin's transfers from SMCDC were not a decision made by Defendant but were in response to Taos County's request.  Indeed, that Griffin was transferred from SMCDC on two other occasions during his stay at SMCDC prior to the August 14th transfer undermines any inference

of retaliatory motive for the final transfer. Because Griffin has come forth with insufficient evidence to raise a material issue of fact on this necessary element of the claim, the Defendant is again entitled to summary judgment.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Defendant Snedeker's Motion for Summary Judgment *(Doc. 29)* be granted and this action be dismissed with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE